No. 81-379

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

THEODORE R. ALLERS,

Plaintiff and Respondent,

vs.

RICHARD JOSEPH WILLIS,

Defendant and Appellant.

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Warden, Christiansen, Johnson & Berg, Kalispell,
Montana

For Respondent:

Hoyt and Trieweiler, Great Falls, Montana

Submitted on briefs: February 25, 1982

Decided: APR 15 1982

Filed: APR 15 1982

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The respondent, Theodore Allers, brought an action in the District Court of the Eleventh Judicial District of the State of Montana, in and for the County of Flathead, by complaint dated June 18, 1979, alleging that on January 21, 1979, he was injured and sustained property damage in a collision between his car and a truck driven by appellant, Richard Willis. Respondent's complaint alleged that the cause of the accident was the negligence of the appellant in driving his vehicle.

On May 14, 1980, the complaint was amended, and the respondent requested that punitive damages be awarded.

On July 2, 1980, appellant counterclaimed, alleging that the respondent had assaulted him immediately after the accident.

The District Court granted respondent's motion for summary judgment in July 1980 as to the appellant being negligent per se, but denied the motion as to proximate cause, damages and all matters concerning comparative negligence.

A jury trial was held May 4 through 7, 1981, and the jury rendered a special verdict in favor of the respondent in the amount of $128,000 actual damages and $15,000 punitive damages for a total judgment of $143,000.

On May 22, 1981, the appellant moved the court for a new trial on grounds of excessive damages, insufficiency of the evidence to justify the damages and error in law. The District Court denied the motion, and appellant appealed to this Court on July 13, 1981.

At approximately 12:15 a.m., on January 21, 1979,

respondent, Theodore Allers, was struck from behind by a pickup truck being driven by the appellant, Richard J. Willis. The accident occurred on U.S. Highway 40 in Columbia Falls, Montana, near a restaurant known as Todd's Cafe. The road is straight, level, paved and well lighted, but was very icy at the time of the accident.

Allers, at the time of the accident, was traveling east approximately twenty to twenty-five miles per hour and was preparing to turn right into Todd's Cafe for a cup of coffee. He was struck from behind, and the force was sufficient to tear the front seat mounts from the floor where they were bolted and to propel his car at least 120 feet into a steel pole on the side of the road. Respondent's vehicle was totaled, and appellant's truck sustained approximately $1,000 in damages.

Willis, by his own admission, had been drinking alcoholic beverages steadily for eight hours prior to the collision. He testified that he had consumed somewhere between twelve and eighteen beers and at least two mixed drinks in the eight-hour period before the collision. His blood alcohol content was found to be .20% when a test was administered at the North Valley Hospital in Columbia Falls.

The collision and the events leading up to it were witnessed by Rhonda Coverdale, who was driving her car east on Highway 40 behind respondent. She testified that the appellant had pulled onto the highway without stopping, accelerated rapidly, fishtailed and was going about forty-five miles per hour at the time of the collision. The speed limit was twenty-five miles per hour. Also, she testified that the appellant did not use his brakes or attempt to

swerve out of the way.

Immediately after the collision, both men exited their vehicles and headed towards each other. A scuffle ensued and Allers struck Willis in the shoulder. Both men then ended up on the ground with Allers on top trying to hold down Willis who was flailing his arms and swearing. Allers, Rhonda Coverdale and Michael Stotts, the officer who investigated the accident, all testified that Willis was grossly intoxicated. Officer Stotts also testified that Willis had a reputation in the community of becoming "belligerent and possibly violent" after he had a lot to drink.

Allers alleged that his back and neck were permanently injured by the automobile collision. The injuries were alleged to be "cervical and lumbrosachal radiculitis secondary to soft tissue swelling, and injury to the ligaments and joint capsules in those regions of the spine." As a result, Allers alleged that he will continue to experience pain for the rest of his life whenever he participates in strenuous activities. Allers was twenty-seven years old at the time of the accident and had been a manual laborer his entire adult life.

Allers was not able to go back to work until six months after the accident when his physician released him. The evidence revealed that Allers was still experiencing pain when at work and three months later, on October 14, 1979, he fell and reinjured his back. He has not worked since.

The issues presented for discussion are:

1. Whether the District Court erred by excluding

-4-

evidence of a pending workers' compensation claim?

2.   Whether the District Court erred in dismissing appellant's counterclaim for battery?

3.   Whether the District Court erred in instructing the jury concerning loss of earning capacity?

4.   Whether the District Court erred in instructing the jury on punitive damages?

5.   Whether the verdict was excessive?

The District Court properly excluded the evidence concerning a pending workers' compensation claim. The vast majority of jurisdictions have ruled that the prejudicial impact of allowing a jury to receive evidence of a plaintiff's pending workers' compensation claim vastly outweighs the probative value. 77 A.L.R.2d 1154, 1156; 47 A.L.R.3d 234; Pozzie v. Mike Smith, Inc. (1975), 33 Ill.App.3d 343, 337 N.E.2d 450. It has been stated at 77 A.L.R.2d at 1156, that:

> "Generally, it has been held to constitute error, requiring a reversal or new trial, to bring to the jury's attention the fact that the plaintiff in a personal injury or death action is entitled to workmen's compensation benefits. The courts have reasoned that such information would tend to prejudice the jury and influence their verdict, either as to liability or damages, as such information is ordinarily immaterial and irrelevant."

Here, the fact that Allers reinjured his back at work some ten months after the accident was properly admitted into evidence, but the fact that he had a pending workers' compensation claim was clearly inadmissible.

It was not reversible error when the District Court dismissed appellant's counterclaim for battery. In Collins v. Itoh (1972), 160 Mont. 461, 503 P.2d 36, this Court held:

> "This Court, on a number of occasions, has

-5-

> stated that cases and issues should not be withdrawn from a jury unless reasonable and fair-minded men could reach only one conclusion from the facts. Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57; Bridges v. Moritz, 149 Mont. 273, 425 P.2d 721; Holland v. Konda, 142 Mont. 536, 385 P.2d 272. Genuine issues of fact should be submitted to the jury. However, whether evidence on behalf of a plaintiff is sufficient to take a case to the jury is a question of law for the trial judge. Lovas v. General Motors Corp. (6 Cir.), 212 F.2d 805. A bare scintilla of evidence is not sufficient to require submission to the jury. Volume 2B, Barron and Holtzoff, section 1075, and Johnson v. Chicago, Milwaukee and St. Paul Ry. Co., 71 Mont. 390, 230 P. 52." 503 P.2d at 42. (Emphasis added.)

The only evidence that appellant presented at trial concerning the alleged battery and his resulting rib injury was his own testimony. However, even his testimony at the trial was contrary to his statements in a previous deposition. In the deposition he stated that he had injured his ribs as a result of the collision, not as a result of a blow by respondent. Further, appellant did not call his physician to the stand, and he refused respondent's pretrial discovery request to produce the physician's medical report. The record was void of any credible evidence that would lead a reasonable person to believe that respondent caused appellant's rib injury. Appellant's counterclaim was "fanciful, frivolous, gauzy or merely suspicious" even when construed in the light most favorable to him. Van Uden v. Hendricksen (1980), ___ Mont. ___, 615 P.2d 220, 224, 37 St.Rep. 1431.

The District Court did not err when instructing the jury concerning impairment of earning capacity. Appellant's contention that the respondent failed to prove by legally sufficient evidence that the injuries which he received were attributable to the automobile accident is without merit.

Impairment of earning capacity and the burden to prove the same was well defined by this Court in Thomas v. Whiteside (1966), 148 Mont. 394, 421 P.2d 449, where we stated:

> "Impairment of earning capacity is different from loss of wages. It is the permanent diminution of the ability to earn money in the future. The loss is a part of general damages which may be inferred from the nature of the injury without proof of actual earnings or income. Proof of the injured person's previous health, age, occupation, skills, education, probable number of productive years remaining, physical and mental impairment proximately caused by the injury and similar factors are sufficient to infer a loss of an established earning capacity. Connolly v. Pre-Mixed Concrete Co., 49 Cal.2d 483, 319 P.2d 343; Murray v. Mossman, 52 Wash.2d 885, 329 P.2d 1089; Jackson v. Southwestern Public Service Co., 66 N.M. 458, 349 P.2d 1029." 421 P.2d at 451.

The appellant cites Wilson v. Northland Greyhound Lines (D. Mont. 1958), 166 F.Supp. 667, as authority for his contention that the respondent failed to establish a sufficient causal connection. The Wilson case states:

> "The general rule regarding the proof required to establish causal connection between an accident and the injury claimed is stated by Corpus Juris Secundum as follows: 'Plaintiff must prove by legally sufficient evidence that all the injuries for which he claims damages are properly attributable, in a medical sense, to the accident. While plaintiff need not establish such causal connection with certainty, he must do so with reasonable certainty or by a preponderance of the evidence. A mere guess or conjecture on the subject, expert or otherwise, is not sufficient, nor should difficulty in establishing the proximate cause of an injury prompt the court to dispense with proof thereof; but the jury may infer the cause of an injury from the facts proved. There can be no recovery for an injury or condition which the evidence shows might have resulted from two or more causes, for only one of which defendant is responsible. So, too, it is not sufficient for one seeking damages for a condition claimed to have resulted from an accident or injury to show that such accident or injury might or could have caused the condition; other causes should be excluded.'

25 C.J.S. Damages section 162, pp. 822-824."
106 F.Supp. at 675-676. (Emphasis added.)

Both _Thomas_ and _Wilson_ state that an inference can be drawn by the trier of fact as to the cause of an injury. In this case, the jury chose to infer from the evidence presented that the automobile accident was the direct cause of respondent's injuries and we will not supplant their findings with one of our own. Lauman v. Lee (1981), _____ Mont. _____, 626 P.2d 830, 833, 38 St.Rep. 499. Respondent may not have established a causal connection with certainty, but the trier of fact determined he had done so "with reasonable certainty or by a preponderance of the evidence." _Wilson,_ supra.

The jury was properly instructed by the District Court on punitive damages. Appellant's contention that the jury instruction was improper because it allowed the jury to award punitive damages based upon ". . . recklessness, wantonness, or malice of another . . ." is contrary to the overwhelming weight of authority. Further, the appellant's argument that the Montana statute on punitive damages, section 27-1-221, MCA, is modeled after a similar California statute and that, therefore, the case of Gombos v. Ashe (1958), 158 Cal.App.2d 517, 322 P.2d 933, prevents a jury from awarding punitive damages for the act complained of is only partially correct.

While it is correct that the California statute and the Montana statute are virtually identical, the case of Gombos v. Ashe, supra, was overruled in Taylor v. Superior Ct. of Los Angeles Cty. (1979), 157 Cal.Rptr. 693, 598 P.2d 854. The California Supreme Court held in _Taylor_ that anyone who voluntarily commenced and thereafter continues to

consume alcoholic beverages to the point of intoxication knowing that they thereafter will be operating a motor vehicle, demonstrates such a conscious and deliberate disregard of the interests of others, that their conduct may be called willful or wanton; accordingly, punitive damages are recoverable in a personal injury action brought against an intoxicated driver. This reasoning comports well with this Court's principles concerning punitive damages. We stated in Graham v. Clarks Fork National Bank (1981), ___ Mont. ___, 631 P.2d 718, 721, 38 St.Rep. 1140, 1143-1144:

> "To warrant the recovery of such damages
> [punitive damages] the act complained of must
> not only be unlawful, but must also partake
> somewhat of a criminal or wanton nature. And
> it is an almost universally recognized rule
> that such damages may be recovered in cases,
> and only in such cases, where the wrongful
> act complained of is characterized by some
> such circumstances of aggravation as willful-
> ness, wantonness, malice, oppression, brutal-
> ity, insult, recklessness, gross negligence,
> or gross fraud on the part of the defendant.
> (8 R.C.L.585, 586.)"

See also: Lauman v. Lee (1981), ___ Mont. ___, 626 P.2d 830, 833, 38 St.Rep. 499; Butcher v. Petranek (1979), ___ Mont. ___, 593 P.2d 743, 36 St.Rep. 830; Butlers v. Mince (Colo.App. 1980), 605 P.2d 922; Svejcara v. Whitman (1971), 82 N.M. 739, 487 P.2d 167; 65 A.L.R.3d 656.

Appellant's argument that the verdict in this case was excessive is erroneous. This Court has addressed the question of what constitutes an excessive verdict in numerous cases. In Salvail v. Great Northern Railway Company (1970), 156 Mont. 12, 473 P.2d 549, we held:

> "The amount to be awarded as damages is
> properly left to the jury and this Court will
> not substitute its judgment for that of the
> jury particularly where, as here, the trial
> court has approved the verdict by denying a
> new trial. . . It is only where the amount

awarded is so grossly out of proportion to the injury as to shock the conscience that this Court will intervene." 473 P.2d at 560.

Again, in Lauman v. Lee, supra, we held:

"Our function in reviewing the sufficiency of proof of actual damages is to determine whether there is substantial credible evidence in the record to support the jury's verdict. We must view the evidence in a light most favorable to Lauman, the prevailing party below, and where the record presents conflicting evidence, resolved by the jury, this Court is precluded from disturbing the verdict. This rule is particularly applicable when the District Court has passed upon the sufficiency of the evidence on motion for new trial and has upheld its sufficiency. Strong v. Williams (1969), 154 Mont. 65, 68-69, 460 P.2d 90, 92." 626 P.2d at 833.

See also: Yates v. Hedges (1978), 178 Mont. 488, 585 P.2d 1290; Smith v. Kenosha Auto Transport (D.C. Mont. 1964), 226 F.Supp. 771, 774.

Applying the above authority to the facts presented here, it is clear that there was substantial credible evidence to support the jury's verdict, and the verdict did not "shock the conscience" of this Court. Respondent requested $52,116.34 in compensatory damages, $25,000 in punitive damages, and left to the jury the amount that should be awarded for impairment of earning capacity. The fact that the jury awarded a total of $143,000 (approximately $75,000 for impairment of earning capacity, $15,000 in punitive damages, and $52,116.34 in compensatory damages) is not sufficient grounds to change the verdict. Indeed, the amounts requested and the amounts received are not in discord, nor are they excessive.

Respondent contends that this appeal should be dismissed because the appellant's insurer failed to post a supersedeas bond for the full amount of the judgment. This

contention is without merit. The respondent's remedy for appellant's failure to post a supersedeas bond is to execute on the judgment. The fact that a supersedeas bond was not posted does not affect the right to an appeal. However, the appeal may be moot if the respondent is able to execute on the judgment. Gallatin Trust & Savings Bank v. Henke (1969), 154 Mont. 170, 461 P.2d 448, 451.

The judgment is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices