No.   92-173

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JESSICA LYNN MORALLI,

              Plaintiff and Respondent,

     -vs-

LAKE COUNTY, MONTANA,

              Defendant and Appellant.


APPEAL FROM:   District Court of the Twentieth Judicial District,
               In and for the County of Lake,
               The Honorable C. B. McNeil, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

               Daniel W.  Hileman  and  James  E.  Vidal,  Murray  &
               Kaufman, Kalispell, Montana

          For Respondent:

               Douglas J. Wold, Wold Law Firm, Polson, Montana

FILED

OCT 8 - 1992

Filed:
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   July 9, 1992

Decided:   October 8, 1992

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff, Jessica Moralli, brought a negligence action against Lake County, Montana in the Twentieth Judicial District Court, Lake County, Montana. Lake County contended that Ms. Moralli negligently caused her own injuries. A jury found that Lake County was 70% negligent and that Ms. Moralli was 30% negligent. Defendant appeals from the judgment and order denying its motion for judgment notwithstanding the verdict. We affirm.

The issues presented for review are as follows:

1. Whether the District Court erred in denying Lake County's motion for directed verdict.

2. Whether the District Court erred in admitting evidence of medical expenses without proper foundation.

3. Whether the District Court erred in refusing to instruct on premises liability.

4. Whether plaintiff's counsel's improper closing arguments require a reversal of the jury's verdict.

5. Whether there is sufficient credible evidence to support the jury's verdict.

Jessica Moralli pled guilty to criminal charges arising from a hit-and-run accident in Polson, Montana in July of 1988 and was sentenced to serve sixteen days in the Lake County jail. She served eight consecutive days following her arrest and was allowed to finish the remaining eight days of the sentence on weekends. She served two of these days on September 6 and 7, 1988. All ten

2

days were served without incident in a women's cell with a bathroom which included a full-length shower curtain. Each time, Ms. Moralli was given a two-piece suit and a pair of slippers to wear while she was in jail.

The remaining six-day sentence was subsequently amended, only requiring Ms. Moralli to serve the four days from September 13 to September 16, 1988. When Ms. Moralli returned to the Lake County jail on September 13, 1988 to serve the four days, jail personnel placed her in a different cell. Ms. Moralli requested footwear; none was given to her. She then requested that she be allowed to wear her own socks or her own tennis shoes. Jail personnel denied this request also.

Ms. Moralli and another witness testified that the cell Ms. Moralli was placed in had a shower with a shower curtain ending eighteen inches above the floor. Ms. Moralli testified about the accident and her actions just prior to the accident as follows: She and another inmate both took showers, after which Ms. Moralli returned to the bathroom to use the toilet and to comb her hair. By this time, up to one-half inch of water had accumulated on the floor of the bathroom. As Ms. Moralli rose from the toilet and pulled up her pants, the wet pant legs stuck to her heels and her feet slipped out from under her. At the same time she arose from the toilet she twisted her body away from the open doorway for privacy reasons. As she slipped, she fell backwards, hitting her head, shoulders and back against the wall.

3

The testimony indicates that Ms. Moralli's cellmates came to her assistance when she fell. They notified the jailer on duty, Mr. Fairchild, who did not respond. Hours later, a second jailer, Mr. Emerson, after being informed of the fall, removed Ms. Moralli from her cell and transferred her to a holding cell while he made telephone calls to the Polson city judge to arrange for her release from confinement and to Moralli's boyfriend to arrange for a ride from the jail. Emerson advised Moralli's boyfriend to take her to the hospital because she was injured. Moralli saw a physician the next morning.

Ms. Moralli filed a claim against Lake County for injuries suffered from the fall in its jail. At the time she fell, she was barefoot. The floor surface was smooth concrete. Ms. Moralli claimed that her bare feet, the soapy water from the shower leaking onto the bathroom floor, and the smooth concrete surface all combined to create a dangerous condition resulting in her injuries and that Lake County was negligent in operating the facility. Since the time of the injury in the Lake County jail, Moralli claims she has suffered from the injury and incurred over $5,000 in medical expenses. At trial, Moralli presented testimony from her chiropractor that she would continue to incur medical expenses during her lifetime relating to the 1988 injury. The jury returned a verdict for Ms. Moralli with damages totalling $35,400.00. Judgment was entered for $24,780.00 plus interest and costs because the jury determined that Moralli was 30% negligent.

4

I.

Did the District Court err in denying Lake County's motion for a directed verdict?

Lake County contends that there was no credible evidence to warrant submitting the case to a jury. A motion for a directed verdict should only be granted when there is a complete absence of any evidence to warrant submission to the jury and all factual inferences must be viewed in the light most favorable to the nonmoving party. Jacques v. Montana Nat'l Guard (1982), 199 Mont. 493, 504, 649 P.2d 1319, 1325. A directed verdict for the defendant is not proper if reasonable persons could differ as to the conclusions drawn from the evidence when considered in a light most favorable to the plaintiff. Weber v. Blue Cross of Montana (1982), 196 Mont. 454, 464, 643 P.2d 198, 203.

Issue I and Issue V are so interrelated that it is best to discuss them together. Issue V questions the sufficiency of the evidence to support the jury's verdict. When there exists in the record substantial evidence to support the jury's verdict, we will sustain a district court denial of a motion for a directed verdict. Krueger v. General Motors Corp. (1989), 240 Mont. 266, 277-78, 783 P.2d 1340, 1347-48. In short, a verdict is binding upon this Court if it is based upon substantial evidence, although the evidence may appear inherently weak. Our review of a jury verdict is very narrow in scope. Substantial evidence need only be evidence which from any point of view could have been accepted by the jury as

5

credible. Kitchen Krafters, Inc. v. Eastside Bank of Montana (1990), 242 Mont. 155, 164, 789 P.2d 567, 572.

In order to sustain a claim of negligence, Moralli must present substantial evidence to prove that (1) the County owed a duty to Moralli, (2) the County breached that duty, (3) the breach was the actual and proximate cause of Moralli's injury, and (4) that damages resulted.

1.  What duty did Lake County owe to Moralli?

Lake County had a duty to exercise reasonable and ordinary care for the life and health of the prisoner, to keep her safe and protect her from unnecessary harm. Lake County also had a duty to render medical aid when necessary, treat the prisoner humanely and refrain from oppressing her. Pretty On Top v. City of Hardin (1979), 182 Mont. 311, 315, 597 P.2d 58, 60-61. Clearly, Lake County had a duty to provide Moralli with a reasonably safe accommodation during the period of her incarceration.

2.  Did Lake County breach this duty?

Ms. Moralli presented evidence that the county knew or should have known that the condition of the bathroom floor was far from ideal. Another inmate had fallen there within the previous month. Pretty On Top requires only reasonable and ordinary care for the life and health of the prisoner. Pretty On Top, 597 P.2d at 60. However, evidence presented by Ms. Moralli indicates that the condition of the floor in the bathroom was slippery and that jail personnel knew the floor was slippery. Ms. Moralli also presented

6

evidence that she asked for footwear and when that request was denied, she asked if she could keep her own footwear and that request also was denied. The evidence presented by Ms. Moralli also indicates that the county provided no medical assistance although the jailer was aware that Ms. Moralli had fallen in the cell's bathroom and that he later released her, advising her boyfriend to take her to the hospital. At that time, Moralli still had two days of her sentence to serve. We conclude that there is substantial evidence from which the jury could properly have found that Lake County breached its duty.

3.  Did the County's conduct cause Moralli's injury?

A jailer is not liable for injury resulting from an inmate's intentional conduct. Pretty On Top, 597 P.2d at 61. This issue often arises in cases which result from a suicide, as in Pretty On Top. Lake County contends that Ms. Moralli acted intentionally by entering the bathroom, that she was aware of the floor condition at that time and should have been careful--that her own negligence caused her injury. Lake County also contends that the proximate cause of her injury was when she hooked her pant leg on her heel. Again, viewing the evidence in a light most favorable to Ms. Moralli, the jury could have found that it was foreseeable that the floor would become wet and slippery from inmates' showers, that footwear or some other protection was a necessary precaution against slips and falls, and that the inmates might need to use the bathroom facility when the floor was wet with standing water. Ms.

7

Moralli's intentional conduct was insufficient to break the chain of causation.

We conclude that the county has failed to demonstrate a complete absence of evidence to warrant submission of the case to the jury. We hold that the District Court properly denied the County's motion for a directed verdict.

We further conclude that the record contains substantial evidence to support the jury's verdict. We therefore hold there was sufficient credible evidence to support the jury's verdict.

II.

Did the District Court err by admitting evidence of medical expenses without proper foundation?

Lake County contends that Ms. Moralli provided no foundation that the expenses reflected on Exhibit 3, a summary of medical expenses resulting from the accident, were related to the slip and fall in the Lake County jail. In Cain v. Stevenson (1985), 218 Mont. 101, 706 P.2d 128, the appellant made a similar argument. We held that a claimant is competent to testify as to his past and present condition, but that his testimony, standing alone, is not sufficient to establish cause for those aspects of an injury not apparently related to the accident in question. Cain, 706 P.2d at 131. We noted that:

> not all injuries require medical expert testimony to prove permanency or causation. (It has been held that medical testimony is not necessary to prove permanent injuries or their cause where) the nature of the injury is such that laymen can plainly see, or infer from the injury, its cause

8

and that it will be permanent, such as the loss of a limb. Respondent's back injury was not such an injury.

Cain, 706 P.2d at 131.

In Cain, we held that inadequate proof of permanent injury required a reversal, but only on the issue of damages. Cain, 706 P.2d at 131-32. Moralli's testimony relating to past and present condition was competent under Cain, but she could not testify to future damages. That required qualified medical testimony from an expert witness. Dr. William F. Risch, Moralli's treating chiropractic physician for the six-month period prior to trial, testified to his history, observations and treatment and gave his opinion that more likely than not her injury was permanent.

A plaintiff is not required to establish the causal connection between the accident and her injuries with certainty; she merely must do so with reasonable certainty or by a preponderance of the evidence. Allers v. Willis (1982), 197 Mont. 499, 505, 643 P.2d 592, 595-96. Moralli testified that she had been free of symptoms from a prior injury for five years before this injury. Together, Moralli's testimony relating to her past and current condition and Dr. Risch's testimony relating to her current and future condition were sufficient foundation for medical expenses.

We hold that the District Court did not err in admitting evidence of medical expenses.

## III.

Did the District Court err in refusing to instruct the jury on premises liability?

9

Lake County proposed and the District Court refused the following jury instruction:

The defendant has the duty to exercise ordinary care to keep his premises reasonably safe for all persons who foreseeably might come upon them, and to warn such persons of any hidden danger upon such premises.

Neither of the parties contended that there was a hidden danger lurking on the premises. Rather, the County primarily contended that the condition was known or obvious and that Ms. Moralli was contributorily negligent by making use of the bathroom in such manner. While the above instruction is a correct statement of the law in Montana, it is inappropriate in a case such as this one where there is no hidden danger on the premises.

Lake County also proposed and was refused two other instructions. Proposed instruction 16 provided:

The defendant is not liable to plaintiff for physical harm caused by any activity or condition of the jail facility whose danger is known or obvious to the plaintiff, unless defendant should have anticipated the harm despite such knowledge or obviousness.

This instruction, from Kronen v. Richter (1984), 211 Mont. 208, 211, 683 P.2d 1315, 1317, relates to nonliability of a business owner to a business invitee for conditions which are known or obvious to the plaintiff and is inappropriate for the facts of this case.

Proposed instruction 17 states that a landowner is entitled to assume that the plaintiff will see and observe that which would be obvious through the reasonably expected use of an ordinary person's senses. Ms. Moralli freely admitted that she saw the water on the

10

floor. She had no choice but to enter the bathroom. This instruction is also inapplicable to the facts of this case.

Section 25-7-301(5), MCA, provides:

. . . In charging the jury, the court shall give to it all matters of law which the court thinks necessary for the jury's information in rendering a verdict.

In giving jury instructions, the trial court is required to give the relevant law favoring both sides. Demaree v. Safeway Stores, Inc. (1973), 162 Mont. 47, 508 P.2d 570. The District Court gave a general negligence instruction and an instruction on the duty of care for jail operators as established by Pretty On Top, 597 P.2d at 60-61. When taken as a whole, if the instructions state the law applicable to the case, a party cannot claim reversible error. Goodnough v. State (1982), 199 Mont. 9, 647 P.2d 364. By giving the general negligence instruction and the instruction describing the duty of care owed by the ordinary and prudent jailkeeper, the District Court gave the jury a pertinent summary of the applicable Montana law. We cannot say that Lake County was prejudiced by the District Court's giving these instructions and refusing to give Lake County's proposed instructions numbered 15, 16 and 17.

We hold that the District Court did not commit reversible error by refusing to give Lake County's proposed instructions relating to the duty that Lake County owed to Ms. Moralli.

IV.

Do plaintiff's counsel's closing arguments constitute reversible error?

Lake County objected twice to comments made by Ms. Moralli's counsel during his closing argument. Lake County contends that these comments prejudiced the jury and prevented the County from obtaining a fair trial.

The first such comment referred to Mr. Emerson's absence as a witness for Lake County. Emerson, the jailer on duty when Ms. Moralli was released, was still employed by the County at the time of the trial. Counsel for Ms. Moralli stated that the County did not have Emerson testify because "he would have hurt their case very badly." Lake County objected to this remark. The District Court sustained the objection and gave a curative instruction to the jury, advising them that they were not allowed to consider any statements made by plaintiff's attorney as to what Emerson's testimony may or may not have been. Plaintiff's counsel contends that the comments regarding Mr. Emerson were fair statements as to the inference that could be drawn by the County's failure to call a crucial witness, and were not improper comment.

Improper argument requires reversal only when prejudice has resulted which prevented a fair trial. Gunnels v. Hoyt (1981), 194 Mont. 265, 276, 633 P.2d 1187, 1194. In Gunnels, the defense counsel made improper comments upon and reference to excluded

12

evidence, which indicated to the jury that the plaintiff was concealing evidence. We concluded that the district dourt properly instructed the jury "not to draw any inferences from rulings on evidence, not to consider rejected evidence, and not to conjecture or draw any inferences as to what an answer might have been, or as to the reason behind any objection." Gunnels, 633 P.2d at 1194. We could not say that any prejudice resulted to the plaintiff in Gunnels. The argument in this case was even less prejudicial. Plaintiff's counsel did not comment on excluded evidence. He did, however, comment on what testimony might have been. This was improper, but sufficiently cured by the District Court's instruction regarding the comment. Plaintiff's counsel's reference to private logs kept by county employees was similarly handled by the District Court.

Lake County argues that the best solution is for the Court to hold that prejudice will be presumed where counsel offers improper argument or comments during trial and would have us place the burden on the offending party to establish a lack of prejudice. We decline to do so.

The other comments that Lake County objected to involve Ms. Moralli's counsel's remarks about county employees taking him to the wrong jail cell and the jail supervisor not giving certain documents to him, followed by his remark that he did not feel there was an intentional deception. This objection, overruled by the District Court, involves what the County calls "an attempt to infer

13

to the jury that there was some sort of deception on the County's part." However, Ms. Moralli's counsel's comments related to properly admitted evidence. The jury can make inferences from properly admitted evidence.

We conclude that these arguments, although not ideal, do not constitute reversible error.

V.

Is there sufficient credible evidence to support the jury's verdict?

We addressed this issue along with Issue I and concluded that there was sufficient credible evidence from which the jury could find in favor of Ms. Moralli.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

October 8, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Daniel W. Hileman
James E. Vidal
MURRAY & KAUFMAN, P.C
P.O. Box 728
Kalispell, MT  59903-0728



Douglas J. Wold
WOLD LAW FIRM
P.O. Box 1212
Polson,  MT  59860-1212

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy